TJOFLAT, Circuit Judge,
specially concurring:
I agree with the court that John Hetherington was not representing Philmore under the Sixth Amendment Assistance of Counsel Clause[1] at the time of his allegedly deficient performance. Philmore had not yet been charged with the offenses for *1266 which he was eventually indicted; hence, the Assistance of Counsel Clause had not come into play.
I write separately for two reasons. First, the reading audience may wonder how it came about (1) that the Supreme Court of Florida, on direct appeal, treated Philmore’s claim that his statements to the police and grand jury were the product of Hetherington’s ineffective assistance of counsel as a claim based on the Sixth Amendment’s Assistance of Counsel Clause and then invited Philmore to pursue such a claim on collateral attack,[2] and (2) that the district court likewise treated the claim as a viable Sixth Amendment claim by issuing a certificate of appealability, only to have this court summarily reject the claim for the obvious reason that the Assistance of Counsel Clause had no application at all. Second, some in the reading audience may conclude from such treatment that Hetherington’s performance was immune to a federal constitutional challenge, that is, that Philmore’s statements could not have been excluded on the constitutional ground that they were the product of ineffective assistance of counsel. Such a deduction would be incorrect; Phil-more simply failed to raise his challenge in a cognizable manner.
The truth is that Hetherington’s performance was subject to challenge under the Fifth Amendment, as the state trial court recognized in ruling on Philmore’s pretrial motion to suppress the statements at issue. Hetherington had represented Philmore because Philmore, having been advised of his Miranda? rights, had asked for the appointment of counsel at the time of police questioning, and Hetherington had been appointed for that purpose.[3]
[4] At the evidentiary hearing on the motion to suppress, the trial court understood the Fifth Amendment source of Hetherington’s appointment. After hearing the relevant testimony, the court found that the quality of Hetherington’s representation satisfied the Fifth Amendment’s requirement[5] and denied the motion with respect *1267 to the statements Philmore made in Hetherington’s presence,[6] but it granted the motion as to the statements Philmore made in the polygraph setting outside Hetherington’s presence.
I begin my discussion by reviewing briefly the circumstances leading to Hetherington’s appearance as Philmore’s counsel and comprising his representation of Philmore. From there, I explore the hearing on Philmore’s motion to suppress and the trial court’s ruling and explain how Philmore’s ineffective assistance claim later (and erroneously) became a claim under the Sixth Amendment’s Assistance of Counsel Clause rather than the Fifth Amendment’s Self-Incrimination Clause. Finally, I describe the ways in which Hetherington’s performance properly could have been, although in this case was not, challenged on federal habeas review.
I.
Defendant Philmore was arrested by the Martin County Sheriffs Office on November 14, 1997 for armed trespass on posted land. During a police interrogation in the early morning hours of November 15, Phil-more also confessed to participating in an armed bank robbery and, then, invoked his right to counsel under the Fifth and Fourteenth Amendments.[7] At that point, the police properly suspended the interrogation and, that same day, provided John Hetherington, an assistant public defender, to represent Philmore during the balance of the police investigation. No court ever appointed Hetherington; he represented Philmore as a volunteer at the request of the police following Philmore’s invocation of his Fifth Amendment rights. Indeed, ■ at the time of Hetherington’s entry into the matter, no case was pending, or other formal proceeding had taken place, against Philmore.
Almost immediately following the provision of Hetherington to serve as Phil-more’s Fifth Amendment counsel, attorney and client began to discuss the abduction and likely murder of Kazue Perron. Phil-more insisted to Hetherington that he had no knowledge concerning an abduction or murder of Perron, and, based on that representation, the bank robbery to which Philmore had already admitted, and other serious charges Philmore was facing in another county, Hetherington decided that Philmore’s best option was to cooperate with police. Thus, Hetherington allowed the police to interview Philmore again on November 18.
At the November 18, 1997 interview, the police questioned Philmore about the Perron abduction and murder. Consistent with his conversations with his attorney, Philmore denied any knowledge.
*1268 Seeking to confirm the veracity of this statement, the police asked Philmore to submit to a polygraph examination. After receiving assurances from his client that he was telling the truth, and warning his client that there would be serious consequences if he were not telling the truth, Hetherington agreed to present Philmore for the examination, which went forward on November 20. Pursuant to the local polygraph protocol, Hetherington was not permitted in the room while the police examined his client. Nevertheless, when Philmore’s story began to change during that first polygraph examination, the detective administering the test ceased his questioning and notified Hetherington that there was a problem. Apparently, Philmore was now willing to acknowledge that he was present for and had knowledge of Perron’s abduction and murder, but he maintained that he was not the triggerman directly responsible for her death.
After further consultation, convinced that Philmore was now telling the truth and discerning that Philmore’s best strategy was to position himself as a cooperating non-shooter, Hetherington next agreed to permit a second police interview vfith Phil-more, on November 21. At that interrogation, Philmore admitted to being present for the abduction and murder, maintained that he was not the shooter, and agreed to help the police locate Perron’s body. In order to confirm Philmore’s latest story, the police, with Hetherington’s consent, subjected Philmore to a second polygraph examination on November 23, again outside of Hetherington’s presence. Hetherington advised his client not to continue cooperating, and to make no further statements, if he was, in fact, the shooter. For a second time, however, Philmore failed the polygraph examination: it was now clear that Philmore was the shooter.
Now backed into a corner due to his client’s lack of candor, Hetherington came to the conclusion that, if Philmore was the shooter, he might as well be a cooperating shooter if he were to have any hope for prosecutorial leniency. Accordingly, on November 26, 1997, he permitted the police to interview Philmore for a third time. On this occasion, Philmore gave a full confession to the abduction and murder. Furthermore, Philmore agreed, with Hetherington’s consent, to testify before the grand jury on December 16, 1997, about his role in the crimes.
That same day, the grand jury indicted Philmore for first-degree murder, conspiracy to commit bank robbery with a deadly weapon, carjacking with a deadly weapon, kidnapping, robbery with a deadly weapon, and third degree grand theft (i.e., the bank robbery). This December 16, 1997 indictment marked the first time that Philmore was formally charged with any crime stemming from the events of November 14, 1997. Further, although Philmore was arrested under a capias pursuant to the indictment on December 17, he was not immediately arraigned or even brought before a judge on these charges. Thus, to the extent Hetherington remained Phil-more’s attorney after the investigation and indictment, he continued to do so as a volunteer; he was never appointed.[8] Instead, the case against Philmore essentially remained dormant for a year, until the trial court, in December 1998, granted Hetherington’s motion to determine status of attorney, removed Hetherington from the case, and appointed Thomas Garland and Sherwood Bauer as special public de *1269 fenders to serve as Philmore’s trial counsel.
II.
In August 1999, Philmore’s trial counsel filed a motion to suppress Philmore’s preindictment statements to the police and any evidence obtained as a result of the statements (including Perron’s body). The articulated basis of the motion was that Hetherington provided ineffective assistance of counsel in violation of the Sixth Amendment and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Additionally, Phil-more’s counsel argued that the de facto denial of counsel during the investigation rendered Philmore’s incriminating statements not freely and voluntarily given under the Fifth and Sixth Amendments.
In October 1999, the trial court held a two-day evidentiary hearing on Philmore’s motion to suppress. Although Philmore’s trial counsel framed their suppression-due-to-ineffective-assistance argument in terms of Strickland and the Sixth Amendment, the trial court, ruling from the bench, correctly saw the argument for the Fifth Amendment claim[9] it actually was:
The Court views the motion as going to whether or not the statements were given freely and voluntarily and whether the Defendant was afforded the right to counsel as guaranteed him by the constitution at the time the statements were made. Accordingly, the Court is going to address the merits of the motion on that basis.... The issues before the Court are whether the Defendant, upon his invocation of his Fifth Amendment right, was given counsel within the meaning, spirit and intent of the U.S. Florida Constitution [sic], whether his statements were freely and voluntarily made.[10]
So construed, the trial court found the following facts: (1) “that Mr. Hetherington’s acts fell well within the range of professionally competent assistance”; and (2) “that with competent assistance of counsel, the Defendant gave free and voluntary statements on November 18th, 1997, November 21st, 1997 and November 26th, 1997.” Under this Fifth Amendment analysis, the trial court denied the motion to suppress as it related to Philmore’s statements made, in Hetherington’s presence, on November 18, 21, and 26.[11]
*1270 Following Philmore’s conviction, on direct appeal, Philmore’s counsel challenged the trial court’s denial of the motion to suppress, again, on the ground that Phil-more’s statements were not freely and voluntarily given due to the ineffective assistance of Hetherington’s counsel. The Supreme Court of Florida, however, rather than recognizing, as the trial court did, that Philmore’s claim, although stated in terms of Strickland, was actually a claim under the Fifth Amendment, not the Sixth, effectively bifurcated its review of the trial court’s suppression ruling. It first affirmed the trial court’s conclusion that “Philmore freely and knowingly waived his Fifth Amendment right to remain silent” in speaking to the police. Philmore v. State, 820 So.2d 919, 928 (Fla.2002) (per curiam), cert. denied, 537 U.S. 895, 123 S.Ct. 179, 154 L.Ed.2d 162 (2002) {Philmore I). It deferred a ruling, however, on what it saw as “Philmore’s ineffective assistance claim under the Sixth Amendment,” denying it without prejudice to Philmore’s right to re-assert the claim on collateral review under Florida Rule of Criminal Procedure 3.850. Id. at 928-29. This, of course, was erroneous: Philmore’s claim based on Hetherington’s alleged ineffectiveness was grounded in the Fifth Amendment, not the Sixth; the ineffectiveness argument was the focus of the motion to suppress and all of the evidence presented thereon; and the trial court, on a complete record, properly had already ruled on the ineffectiveness argument as a Fifth Amendment claim. There was no reason for the Supreme Court of Florida to fail to consider the trial court’s ineffectiveness findings pertinent to the Fifth Amendment claim on direct review.
Nevertheless, given the supreme court’s ruling on direct review, Philmore’s state collateral review petition included a claim that Hetherington’s conduct constituted ineffective assistance of counsel, ostensibly under the Sixth Amendment and Strickland.[12] At this point, the supreme court’s bifurcated ruling put the post-conviction trial court — in this case, the same court and judge that conducted Philmore’s trial — in a difficult position: the collateral petition on this issue, invited by the supreme court, effectively demanded that the trial court (now the post-conviction court) “reconsider” its own pretrial suppression ruling. This reconsideration would also require a second (and redundant) evidentiary hearing on the issue of Hetherington’s alleged ineffectiveness, this time lasting three days.
The post-conviction court also had to make the difficult determination of what exactly the supreme court had ruled on direct appeal and correctly discern that the supreme court had bifurcated its review of the pretrial suppression ruling. This ambiguity, forced on the post-conviction court by the Supreme Court of Florida, unnecessarily raised the odds of error in the collateral proceedings. If the post-conviction court wrongly interpreted the supreme court as simply affirming the suppression ruling, in toto, then it would be bound by the law of the case doctrine to conclude that it was not error to deny the *1271 pretrial motion to suppress and would have no room to “reverse” itself on collateral review by finding error in the denial of suppression. This would make the entire collateral proceeding utterly pointless with respect to the suppression motion. It would also be a misconstruction of what the supreme court held on direct review. If, on the other hand, the post-conviction court properly recognized that the supreme court bifurcated its review — affirming on the voluntariness of the statements, but deferring review on the ineffectiveness claim — then the post-conviction court would be free to “reverse” itself on the question of Hetherington’s ineffectiveness, an issue on which the supreme court had not yet opined. Still, the necessary rehash of the suppression motion and evidentiary hearing would require a needless waste of judicial resources, which the supreme court could — and should — have avoided by ruling on the entire suppression issue (including the ineffectiveness claim) on direct review. A more comprehensive ruling on direct review would have left no claim regarding the suppression motion for state collateral review, saving the parties and the Florida courts time, effort, and resources by reserving any further challenge for federal habeas corpus review.
Perhaps unsurprisingly, the state post-conviction court denied relief, finding once again on the suppression issue that Hetherington’s performance was not ineffective under the Strickland standard.[13] The Supreme Court of Florida, concluding “that the trial court’s determination that Hetherington’s actions were informed, strategic choices is supported by competent, substantial evidence,” affirmed the post-conviction trial court’s finding that Hetherington’s performance was not ineffective. Philmore v. State, 937 So.2d 578, 584-85 (Fla.2006) (per curiam) (Philmore II). In its published opinion, the supreme court lumped its analysis of Hetherington’s preindictment effectiveness in with its review of other claims of ineffective assistance that clearly implicated the Sixth Amendment’s Assistance of Counsel Clause, all under an introductory section setting forth the Strickland standard for ineffective assistance under the Sixth Amendment. See id. at 583-88. Additionally, the supreme court expressly declined “to address the State’s argument that Philmore’s Sixth Amendment right to counsel for the murder had not attached at this time [of Hetherington’s challenged conduct]” on account of its conclusion that Philmore failed to establish that he received ineffective assistance. Id. at 584 n. 6. All of this indicates that the supreme court continued to view, erroneously, Philmore’s claim that Hetherington’s pre-indictment performance was ineffective and should have led to the suppression of Philmore’s incriminating statements as arising under the Sixth Amendment.
*1272 With the Supreme Court of Florida now twice having unmoored Philmore’s suppression claim from its proper Fifth Amendment anchor, the issue reached the federal district court primarily with the trappings of a Sixth Amendment ineffective assistance claim. In his petition for a writ of habeas corpus under 28 U.S.C. § 2254, Philmore styled his ground for relief based on the failure to suppress his pre-indictment statements as follows:
The lower court erred in holding that Mr. Philmore was not deprived of his 4th, 5th, 6th, 8th, and 14th Amendment rights of the Constitution of the United States and the corresponding provisions of the Florida Constitution. The pretrial representation of Mr. Philmore fell far below the standards set in Strickland, and Cronic.[14]
Although his petition nominally invoked several constitutional amendments, including the Fifth Amendment, Philmore’s argument diverted from the original trial court suppression claim that his statements were not freely and voluntarily given due to defects in Hetherington’s assistance to the Sixth Amendment-focused charge that Hetherington’s performance amounted to a complete denial of counsel.[15] Positioned in this way, the district court, in denying habeas relief on this ground, concluded that “the [state] courts’ decisions as to Philmore’s claim of ineffective assistance of pre-indictment counsel were not contrary to nor an unreasonable application of established federal law” under Strickland. This finding sounded in the Sixth Amendment relied upon by the Supreme Court of Florida. The district court then continued the supreme court’s error by granting Philmore’s application for a certificate of appealability, which framed the challenge to Hetherington’s pre-indictment performance as follows: “The lower court erred in finding that Philmore was not denied his constitutional rights, as his pretrial counsel’s performance fell far below the standards of Strickland and Cronic.” In other words, the challenge was presented to us, with the approval of the district court, as a Sixth Amendment ineffective assistance of counsel claim, rather than the Fifth *1273 Amendment claim, contesting the free and voluntary nature of the self-incriminating statements, that it was and should have been, as the trial court initially recognized.
III.
In the foregoing, I have described how Philmore’s claim that his pre-indictment counsel’s ineffectiveness induced him to make self-incriminating statements that were not free and voluntary, in violation of the Fifth Amendment’s Self-Incrimination Clause, improperly morphed into a non-cognizable Sixth Amendment ineffective assistance claim. Because, as we hold, Philmore could have had no Sixth Amendment claim relating to events prior to the initiation of adversary judicial criminal proceedings, one might infer that counsel’s effectiveness is wholly insulated from constitutional challenge prior to the attachment of the defendant’s Sixth Amendment rights. This is not the case. What follows is a description of (1) Philmore’s error in bringing his ineffectiveness claim on federal habeas review, and (2) the manner in which he properly could have, but did not, challenge Hetherington’s performance in federal court.
Initially, as this court correctly holds, Philmore could not have established that Hetherington’s performance violated his Sixth Amendment right to counsel (and, specifically, the effective assistance of counsel) because his Sixth Amendment right to counsel had not yet attached at the time of Hetherington’s challenged conduct. Instead, the only way that a federal habeas court could have reviewed Hetherington’s effectiveness is in the context of the trial court’s denial of Philmore’s motion to suppress the incriminating statements he gave during the police investigation. Under these facts, the federal courts could undertake this review by means of one of two vehicles: (1) a claim that Phil-more’s appellate counsel was ineffective in failing to raise (or ineffectively raising) a challenge on direct appeal to the trial court’s denial of the motion to suppress; or (2) a claim that the Supreme Court of Florida erred by misapplying the law or unreasonably determining the facts in affirming the trial court’s denial of the motion to suppress based on Hetherington’s alleged ineffectiveness under the Fifth Amendment.
The first route — a claim that appellate counsel was ineffective on direct appeal— would be available to Philmore if appellate counsel, on direct appeal, did not challenge (or incompetently challenged) the denial of the motion to suppress. If no such challenge were brought on direct appeal, then appellate counsel would have procedurally defaulted or waived Philmore’s Fifth Amendment claim that Hetherington was ineffective (and, accordingly, that Phil-more’s statements should have been suppressed). In that situation, this procedural default or waiver by appellate counsel would be the specific ineffective assistance under review by the federal habeas court.[16] In order to establish ineffectiveness, Phil-more would need to show (1) that his appellate counsel’s conduct was deficient (i.e., fell below the minimum objective standard of reasonable competence and professionalism); and (2) that such deficient performance resulted in material prejudice such that there is a reasonable probability — sufficient to undermine confidence in the outcome — that, but for coun *1274 sel’s unprofessional errors, the result of the proceeding would have been different (i.e., that if not for his appellate counsel’s ineffectiveness, the Supreme Court of Florida, on direct appeal, would have reversed the trial court’s denial of his motion to suppress). See Strickland v. Washington, 466 U.S. 668, 687-94, 104 S.Ct. 2052, 2064-68, 80 L.Ed.2d 674 (1984).
The second route — a claim that the Supreme Court of Florida misapplied the law or unreasonably determined the facts in reviewing the denial of the motion to suppress — would be available if Philmore’s counsel properly challenged the trial court’s suppression ruling on direct appeal yet, nevertheless, lost the challenge. The federal habeas statute provides for a federal remedy upon a showing that the state court’s adjudication of a claim
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). Accordingly, Phil-more could properly seek federal habeas relief via a claim that the Supreme Court of Florida’s decision regarding the suppression motion (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.
Unfortunately for Philmore, he raised neither claim in his federal habeas petition, and neither issue appears in the certificate of appealability to this court. Philmore’s § 2254 petition does not claim that his counsel on direct appeal provided constitutionally ineffective assistance. Indeed, any such claim would almost certainly fail, as Philmore’s appellate counsel did challenge the trial court’s denial of the suppression motion on direct appeal. Moreover, Phil-more’s appellate counsel properly based the challenge on the ground that Phil-more’s statements were not freely and voluntarily given, pursuant to the Fifth Amendment, due to the ineffective assistance of Hetherington’s counsel. As such, counsel on direct appeal brought the right claim in the right way, i.e., was not ineffective; the argument simply did not carry the day in the Supreme Court of Florida.[17] Similarly, neither Philmore’s petition nor the certificate of appealability includes any claim that the Supreme Court of Florida misapplied the law or unreasonably determined the facts in affirming the denial of the motion to suppress.
In sum, Philmore failed to avail himself of either of the properly cognizable arguments available to him on federal habeas review for challenging the underlying *1275 claimed ineffectiveness of Hetherington’s pre-indictment counsel.

. The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” The Sixth Amendment’s *1266 Assistance of Counsel Clause was made applicable to the states through the Fourteenth Amendment’s Due Process Clause in Gideon v. Wainwright, 372 U.S. 335, 342-45, 83 S.Ct. 792, 795-97, 9 L.Ed.2d 799 (1963).

. Philmore v. State, 820 So.2d 919, 928-29 (Fla.2002) (per curiam), cert. denied, 537 U.S. 895, 123 S.Ct. 179, 154 L.Ed.2d 162 (2002) (Philmore I). Because ineffective assistance claims (which are generally brought under the Sixth Amendment) are, with minor exception, litigated in collateral proceedings, where the salient facts regarding the reasons why counsel performed as he or she did can be established, the supreme court declined to consider the claim on direct appeal as part and parcel of Philmore’s pretrial motion to suppress and dismissed the claim without prejudice to Philmore's right to raise the claim in a collateral proceeding brought under Fla. R.Crim. P. 3.850. Id.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. As a consequence of his arrest and detention, Philmore had the right to assert his Fifth Amendment privilege against self-incrimination before the police questioned him. The privilege included the right to have counsel present during questioning. (In Malloy v. Hogan, the Supreme Court held that the Fifth Amendment’s Self-Incrimination Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. 378 U.S. 1, 3, 84 S.Ct. 1489, 1491, 12 L.Ed.2d 653 (1964).) Under Miranda, if the detained person is indigent, as Philmore was at the time, the police, i.e., the prosecutorial authority, must provide counsel for him prior to questioning. Miranda, 384 U.S. at 472-74, 86 S.Ct. at 1626-28. Philmore exercised that right during the police’s questioning of him about the armed bank robbery, and Hetherington was appointed to represent him.

. My reading of the transcript of the evidentiary hearing on Philmore’s motion to suppress is that the court used the Sixth Amendment standard for evaluating effective *1267 assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in assessing the quality of Hetherington’s performance under the Fifth Amendment.

. The court, in a later ruling, denied the motion to suppress the statements Philmore made before the grand jury (out of Hetherington’s presence).

. In state criminal proceedings, as here, a defendant's right against self-incrimination, which includes and is protected by the right to counsel during police interrogation, is rooted in the Fifth Amendment, as incorporated and made applicable to the states by the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 3, 84 S.Ct. 1489, 1491, 12 L.Ed.2d 653 (1964) (incorporating the Fifth Amendment right against self-incrimination against the states through the Fourteenth Amendment); see Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (the right against self-incrimination includes the right to the presence of an attorney during interrogation). As a technical matter, then, this right is available pursuant to the Fourteenth Amendment for state defendants. For simplicity, however, I will refer to this incorporated cluster of rights as the defendant’s rights under the Fifth Amendment.

. In fact, Hetherington could not have been appointed Philmore's post-indictment counsel pursuant to the Sixth Amendment because, at the time of his indictment and arrest, Phil-more refused to complete an application for the appointment of a public defender, which would have included the showing of indigency prerequisite to such an appointment.

. I have no doubt that the Fifth and Fourteenth Amendment right to counsel during police interrogation, just like the Sixth Amendment right to counsel during adversary criminal proceedings, implies a right to the effective assistance of counsel. See Powell v. Alabama, 287 U.S. 45, 65, 53 S.Ct. 55, 71, 77 L.Ed. 158 (1932) ("the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment”).

. Indeed, the trial court appears to have summarily rejected the notion that Philmore could assert a claim for ineffective assistance under the Sixth Amendment and Strickland for events transpiring prior to the initiation of adversarial criminal proceedings but, instead, eschewed a literal reading of the motion and consciously construed it as asserting the Fifth Amendment claim that was available: “Well, I don't think it would be appropriate or fair to either the State or the defense for this Court not to rule on the Defendant's Motion to Suppress the Statements simply because the defense counsel chose to site [sic] Strickland in its Motion to Suppress.”

. The trial court granted the motion to suppress with respect to Philmore's statements made to law enforcement outside of Hetherington's presence, i.e. the statements during the two polygraph examinations. The court explained, "With regards to the statements made during the polygraph examination, the Court agrees with Mr. Bauer’s recitation of the facts that any free and voluntary waiver of the presence of Mr. Hetherington was specifically conditioned on being questioned and answers given consistent with those that were given during the statements. Moreover, the detective as well as Mr. Hetherington testified — that protocol wouldn’t allow Mr. Heth *1270 erington in the room. And while the Court's aware of the written waiver of the Defendant, it’s the Court's view that that does not equate to a free and voluntary waiver of counsel during the time of the polygraph examination.”

. Although the Supreme Court of Florida invited Philmore to re-raise his ineffective assistance argument in a post-conviction motion under Fla. R.Crim. P. 3.850 (Motion to Vacate, Set Aside, or Correct Sentence), Phil-more I, 820 So.2d at 928-29, because this is a capital case, Philmore actually brought his petition for state collateral review under Fla. R.Crim. P. 3.851 (Collateral Relief After Death Sentence Has Been Imposed And Affirmed on Direct Appeal).

. In the portion of its order denying post-conviction relief relating to the suppression argument, the state post-conviction trial court did not expressly specify whether it was conducting its ineffective assistance analysis under the Fifth or Sixth Amendment. Given its prior pretrial suppression ruling under the Fifth Amendment, we could assume that the court correctly continued to view this issue as a Fifth Amendment claim. On the other hand, given that the Supreme Court of Florida erroneously posed this ineffectiveness question as one arising under the Sixth Amendment, we could alternatively assume that the court now felt constrained to follow the supreme court's mischarted course off the path of legal rectitude and treat the issue as a Sixth Amendment claim. As the supreme court, in its collateral review, continued to treat the question of Hetherington’s effectiveness as a Sixth Amendment claim, the question of which amendment the trial court proceeded under on collateral review is little more than academic. All that really matters is that the court reaffirmed its previous holding that — whether under the Fifth or Sixth Amendment — Hetherington did not provide ineffective assistance.

. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In Cronic, the U.S. Supreme Court held that the defendant had failed to show actual ineffective assistance of counsel and that it would not presume ineffective assistance because the case did not involve "surrounding circumstances makfing] it unlikely that the defendant could have received the effective assistance of counsel.” Id. at 666, 104 S.Ct. at 2051. The Court also noted, however, that circumstances such as "the complete denial of counsel,” "counsel entirely fail[ing] to subject the prosecution's case to meaningful adversarial testing,” or an extreme case in which "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial” could give rise to a presumption of a denial of the defendant's Sixth Amendment rights. Id. at 659-60, 104 S.Ct. at 2047.

. Incidentally, in his federal habeas petition itself, Philmore appears to have conceded a failure to exhaust this claim in the state courts. Philmore responded "No” in response to the question, "Did you raise Ground II [the challenge to Hetherington's performance] in the Supreme Court of Florida on a direct appeal of your conviction?” See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State....”); Thompson v. Sec’y for Dep’t of Corr., 517 F.3d 1279, 1283 (11th Cir.2008) (per curiam) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State’s established appellate review process”) (quoting O’Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999)).

. In Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Supreme Court held that the Fourteenth Amendment’s Equal Protection Clause guarantees an indigent defendant the right to counsel on a direct appeal made available as of right. As with the Fifth Amendment right to counsel guaranteed by Miranda, I assume this implies the right to effective appellate counsel.

. The effectiveness of Philmore’s trial counsel is also not at issue, primarily because no claim of ineffective assistance of trial counsel, with respect to the motion to suppress, appears in the federal habeas petition or the certificate of appealability. In any event, however, such a claim would also appear to be meritless. It would require a showing (1) that trial counsel was deficient in bringing and litigating the motion to suppress, and (2) that, if not for trial counsel’s ineffectiveness. the trial court would have suppressed Phil-more's incriminating statements and the resulting evidence. In fact, Philmore’s trial counsel did move to suppress the statements, including on the ground that Hetherington’s alleged ineffectiveness rendered the statements not freely and voluntarily given under the Fifth Amendment. Therefore, just like appellate counsel, trial counsel appears to have taken the right steps and made the right argument, just unsuccessfully.